Mr. Justice CAMPBELL
 

 delivered the opinion of the court.
 

 The appellee, who describes himself as a member, in the common and joint-stock association for mutual benefit and advantage, and for .the' mutual acquisition and enjoyment of property, called the “Harmony Society,” filed a bill in the Circuit Court against the appellants, as the trustees and managers! of its’ business and estate. The object of the bill is to obtain for the plaintiff a decree for an account of the share to which-he is entitled in the property,of the society, or compensation for his labor and service during the time he was a member.
 

 In ,1819 he became associated with George Rapp and others, in the Harmony Society.in Indiana, and remained with them there, or. at ^conomy, in Beaver county, Pennsylvania, till 1846. ■ He devoted his time, skill, attention, and care, during that period, to the increase of the wealth and the promotion of the interest of the society.
 

 
 *127
 
 These facts are admitted in the pleadings of either party.
 

 The bill avers, that in 1846, the plaintiff being then forty-eight years old, and worn out with years and labor-for said association, was wrongfully and unjustly excluded from it, and deprived of any share in its property, benefits, or advantages, by-the combination and covin of George Rapp and his associates; that at the tjme of his exclusion he was' entitled to a large sum of money, which those persons unjustly and illegally appropriated to their own use; that George Rapp was. the leader and trustee of the association, invested with the title to its property; and that, since his death, the defendants have acquired the control and management of its business and affairs, and the possession of its effects. The plaintiff calls for the production of the articles of .association, which from time to time have regulated this society, and- prays for an account and distribution- of its property, or a compensation for his labor.
 

 The defendants produce a series of articles, by which the association has been governed, since its organization in 1805.
 

 They admit, that from small beginnings the society havé become independent in their circumstances, being the owners of lands ample for the supply of their subsistence, warm and comfortable houses for the members, and engines and machinery to diminish and cheapen their labors. They affirm •that the plaintiff participated in all the individual, social, and religious benefits which were enjoyed by his fellows, under . their, contract, until he became possessed by a spirit of- discontent and disaffection, a-short time before his membership terminated. They deny that the- plaintiff was wrongfully excluded from the association, or deprived of a share or participation in the property and effects, by the combination or covin of George Rapp and his associates; but assert, that voluntarily, and of his own accord, he separated himself from the. society. They deny that he had a title to ■ any compensation for labor and service while he was a member, other than that which was expended for his support, maintenance, and instruction, ,’and that which he derived during the time from the spiritual and social advantages he enjoyed. To support this averment, they epitomize the history of the Harmony Society, and the agreements which, from time to time, have been the ■ basis of its organization.
 

 The society was .composed at first of Germans, who emigrated to the United States in 1805, under the leadership of George Rapp. The members were associated and combined by .the common belief that 'the government of the patriarchal age, united to the community of property, adopted in the days of the Apostles, would conduce to promote their temporal and
 
 *128
 
 " eternal happiness. ' The founders .of the society surrendered all their property to the association, for the common benefit. • The society was settled originally in Pennsylvania, was removed in 1814 and 1815 to Indiana, and again in 1825 to Economy, in Pennsylvania.
 

 The organic law of the society, in regard to their property, is contained in two sections of the articles of association, adopted in 1827 by-the associates, of whom the plaintiff was one. They are as follows: “All the property of the society, real, personal, and mixed, in law or equity, and howsoever contributed and acquired, shall be deemed, now and forever, joint and indivisible. stock; each individual is to be considered to have finally and irrevocably parted with all his former contributions, whether in land, goods, money, or labor, and the same rule shall apply to all future contributions, whatever they may be.
 

 “ Should any individual withdraw from the society, or depart this life, neither he, in the one case, nor- his representatives, in the latter, shall be entitled to demand an account of said contributions, whether in land, goods, money, or labor; or to,claim anything from the society as matter of right. But it shall be left altogether to the discretion of the superintendent to decide whether any, and,’ if any, what allowance shall be made to such member, or his representatives, as a donation.”
 

 ■ T.he defendants, admitting, as we have seen, that the plaintiff, 1 until
 
 1846,
 
 was a contented member of the association, ■ aüswer and say,, that during that year he became disaffected; used violent threats against the associates; made repeated declarations of his intentions to leave the society, and in that year fulfilled his design "by a voluntary withdrawal and separation from the society, receiving at the'same time from George Rapp two hundred dollars as a donation. They exhibit, as a part of the answer,: a writing, signed, by the plaintiff, to the following effect:
 

 “ To-day I have withdrawn myself from the Harmony Society, and ceased to be a member thereof; I have also received of George Rapp two hundred dollars as a donation, agreeably to contract. Joshua Hachteieb:
 

 “Economy,
 
 June
 
 18, 1846.” ■
 

 This statement of the pleadings shows that no issue was, made in them upon the merit of the doctrines, social or religious, which form the basis of this association; nor any question in reference to the religious instruction and ministration, or the domestic .economy or physical discipline which their deader and the other managers have adopted and enforced.
 
 *129
 
 Nor do they suggest any inquiry into the- condition of the members, and whether they have experienced hardship, oppression, or undue mortification, from the ambition, avarice, or fanaticism, of their guides and administrators.' ' .
 

 The bill depends on the averments, that the plaintiff, approved the constitution of the society; submitted to its government; obeyed its regulations, and prized the advantage of being a member.' The burden of his complaint is, that he was wrongfully, and without, any fault or consent on his part,.deprived of his station through the combination of the leader and his assistants. And the defendants concede the character the plaintiff claims for himself; they concede that'the plaintiff was an approved and blameless member of the association, and was entitled tó whatever its constitution and order provided for the temporal good or the eternal felicity of the members, and assert that he enjoyed them until he became disaffected and repining, and finally surrendered to a spirit of discontent, which moved him to abandon his condition and privileges. As an evidence of this, they produce a writing, signed by him, in' which he acknowledges a voluntary secession from the society, and claims that the case has arisen to authorize him to make an appeal to the bounty of the superintendent, and that the superintendent has answered that appeal by a donation. The value' of this writing is now to be considered. The power of .the superintendent to substract from the otherwise “joint and indivisible stock ” of the society a portion for the individual use of a seceding member, depends upon the concession that, the member has withdrawn voluntarily. He cannot supply one who is the victim of covin or combination. The evidence shows that the mind of the plaintiff, in June, 1846, was disquieted in consequence of his connection with the association,, and that he contemplated a change in his condition; that he made inquiries upon the expediency of a removal from Economy, and made some preparations for his departure; that the leader of the society, suspecting, his .discontent, and discovering some deviation by him from the rules of the society, rebuked him with harshness, and menaced him with .a sentence-of expulsion. Some of the. witnesses testify to such a sentence* while the testimony of others reduces the expressions to an' admonition and menace. But two days after the occurrence off the last of these scenes, and'before any removal had taken, plaoé, the writing in the record was executed by him, embodying his decision to leave the society, and to accept the bounty the constitution permitted the superintendent to bestow» This writing would have much probative force, if we were simply to treat.it as an admission of the statements it contains, when
 
 *130
 
 considered in connection with other evidence in the record. But, we think, this writing is something more than an admission, and stands in a different light from an ordinary receipt. The writing must be treated as the contract of dissolution, between the plaintiff and the society, of their mutual obligations and engagements to each other. ISTo evidence of prior declarations or antecedent conduct is admissible to contradict or to vary it.
 

 It was prepared to preserve the remembrance of what the parties had prescribed to themselves to do, and expresses their intention in their own language; and that such was its object, is corroborated by the fact that for three years there is,no evidence of a contrary sentiment. Treating this .writing as an instrument of evidence of this class, it is clear that the bill has not made a case in which its validity can be impeached. To enable the plaintiff to show that the rule of the leader,, (Rapp,) ■ instead of being patriarchal, was austere, oppressive, or tyrannical ; his discipline vexatious and cruel; his instructions fanatical, and, upon occasions, impious; his system repugnant to public order, and the domestic happiness of. its members; his management of their revenues and estate rapacious, selfish, or dishonest; and that the condition of his subjects was servile, ignorant, and degraded, so that none of them were responsible for their contracts or engagements to him, from a defect of •capacity and freedom, as has been attempted by him in the testimony collected in this cause, it was a necessary prerequisite, that his bill should have been so frámed as to exhibit such aspects of the internal arrangements and social and religious -economy of the association. This was not done; and for this •cause the evidence cannot be considered. The authorities cited from the decision's of this court are decisive. Very
 
 v.
 
 Very, 13 How., 361, 345; Patton
 
 v.
 
 Taylor, 7 How., 157; Crockett
 
 v.
 
 Lee, 7 Wheat., 525.
 

 Decree reversed. ’ Bill dismissed.