## UNITED STATES *v.* GARLINGER.

### APPEAL FROM THE COURT OF CLAIMS.

No. 166. Argued January 4, 5, 1898. — Decided February 21, 1898.

Article 420 of the Treasury Regulations, providing that night watchmen shall be divided into two watches as nearly as possible, both watches to perform duty every night, and empowering the surveyor of the port to make such changes in the division of the watches as he may deem expedient, and to appoint the hours of duty for different watches; and that when it is necessary to assign a night watchman to a vessel, or to any other all night charge, the night watchman so assigned must remain on the vessel or on his charge until relieved, and will be excused from performing duty the following night, does not authorize the payment of an extra day's work to a night watchman so employed during the whole night, and again put upon duty in the following night.

It is not possible for the Secretary of the Treasury, by passing regulations, to divide a day's service into parts, and to attach to each part the pay for a full day's work.

Where payments for work done in Government employ are made frequently and through a considerable period of time, and are received without objection or protest, and where there is no pretence of fraud or of circumstances constituting duress, it is legitimate to infer that such pay-

ments were made and received on the understanding of both parties that they were made in full; and such a presumption is much strengthened if the employé waits two years after the expiration of his service before making any demand for further compensation.

THIS was an action brought by Dixon N. Garlinger, in the Court of Claims, against the United States, wherein he sought to recover for alleged extra service rendered by him while in the employ of the United States. The trial court found the facts to be as follows:

I. The claimant, a citizen of the United States, was appointed, by the collector of the port of Baltimore, a night inspector in the customs service at Baltimore in 1882. He took the oath of office and entered upon the discharge of the duties of night inspector of customs on April 1, 1882, and continued in office until August 25, 1886, a period of 1608 days.

II. During the above-named period the claimant was paid for 1608 days, of which 1353 payments were for night service when he was present rendering actual service, and 255 were for night service when he was absent and off duty.

III. During the 1353 days of night service the claimant was required to perform duty as night inspector from sunset to sunrise and until relieved by the day inspector, the length of the night service consequently varying, and sometimes extending from 5 P.M. of one day until 10 A.M. of the succeeding day. During this time the claimant was not allowed to be off duty on the succeeding night, after having been on duty two watches, except in the 255 instances set forth in Finding II, when he was off duty and received pay. That is to say, he performed the duties of both the first and second watch on 1098 nights without additional compensation and without being allowed to be off duty on any alternate night.

IV. The petition not having been filed until August 24, 1888, 144 days of the number last above stated, are barred by the statute of limitations, leaving 954 days as the subject of the present suit.

V. The claimant objected to his superior officer, the surveyor of the port, against his being required to perform the duties of both watches in one night without being excused

from the performance of duty on the following night, and he subsequently remonstrated at various times.

VI. At the time of his entering the service as night inspector he was furnished by his superior officers with a copy of the regulations promulgated by the Secretary of the Treasury for his governance and defining his duties. It was customary for the surveyor of the port to furnish such regulations to inspectors and others at the time of their entering the customs service. The regulations hereinafter quoted were among those so given to the claimant.

VII. The laws and regulations for the government of officers of customs under the superintendence and direction of surveyor of ports, 1877, were issued by the Secretary of the Treasury to the custom-house authorities of all ports, including the port of Baltimore, and were in operation in all of the principal ports, except Baltimore, in which the practice of the port at the time of the claimant's appointment was not, and had not been, in accordance with the requirement of the regulations making two night watches and relieving the first watch at midnight. There the surveyor of the port had always required the night inspectors to serve from sunset to sunrise.

VIII. The following are among the regulations given to the claimant when he entered the service, above referred to:

"Art. 420. The night watchmen shall be divided into two watches, as nearly equal as possible, both watches to perform duty every night. The surveyor of the port will, however, make such changes in the division of the watches as he may deem expedient, and will appoint the hours of duty for the different watches.

" Whenever it is necessary to assign a night watchman to a vessel, or to any other 'all-night' charge, the night watchman so assigned must remain on the vessel, or on his charge, until relieved, and he will be excused from performing any duty the following night.

" Night watchmen must not quit their charge on being relieved without making their presence personally known to

the officer relieving them. Night watchmen, when on duty, must wear their official badge."

`Upon the foregoing findings of fact, the court decided, as a conclusion of law, that the claimant was entitled to recover $2862.

*Mr. George Hines Gorman* for appellants. *Mr. Assistant Attorney General Pradt* was on his brief.

*Mr. F. P. Dewees* and *Mr. L. T. Michener* for appellee. *Mr. W. W. Dudley* and *Mr. R. R. MacMahon* were on their brief.

MR. JUSTICE SHIRAS delivered the opinion of the court.

Dixon N. Garlinger, the plaintiff in the court below, was employed by the collector of the port of Baltimore, as a night inspector in the customs service, from April 1, 1882, till August 25, 1886. For his services he was entitled to be paid three dollars per day for each day's work actually performed; and it is a conceded fact that he was so paid for each and every day he was in the service.

Two years after he ceased to be so employed he brought this action, claiming to recover additional compensation, and recovered a judgment for the sum of $2862.

The plaintiff based his claim for additional pay upon two grounds, viz., that by the Laws and Regulations for the Government of Officers of Customs under the superintendence and direction of Surveyors of Ports, issued in 1877 by the Secretary of the Treasury, it was, among other things, provided as follows : " The night watchmen shall be divided into two watches, as nearly equal as possible, both watches to perform duty every night. The surveyor of the port will, however, make such changes in the division of the watches as he may deem expedient, and will appoint the hours of duty for the different watches. Whenever it is necessary to assign a night watchman to a vessel, or to any other 'all-night' charge, the night watchman so assigned must remain on the vessel, or

on his charge, until relieved, and he will be excused from performing any duty the following night;" and that, in disregard of this regulation, and of his objections and remonstrances, he was required to perform the duties of both watches in some nights, without being excused from the performance of duty on the following nights.

It is contended that, from these facts, the law will imply a contract between the claimant and the United States, whereby the former will be entitled to be paid for both watches, as if they constituted two days' service.

On the part of the United States it is claimed that the regulation quoted did not constitute an express contract of employment between the parties; that the facts negative any notion of an implied promise to pay any additional sum beyond the statutory rate of three dollars per day; that, even if a breach of contract were shown, no recovery could be had beyond the sum already paid; that there is no obligation on the United States because such a regulation, if it is to receive the construction placed upon it by the court below, is in conflict with the law, and, therefore, null and void; that the construction placed upon the regulation by the court is erroneous; that the regulations of 1877 were repealed and ceased to be in force at any time after March 24, 1883, by reason of subsequent regulations, which should have been applied by the court below.

Section 2733 of the Revised Statutes, under the authority of which the claimant was employed, was as follows:

"Each inspector shall receive, for every day he shall be actually employed in aid of the customs, three dollars; and for every other person that the collector may find it necessary or expedient to employ, as occasional inspector, or in any other way in aid of the revenue, a like sum, when actually so employed, not exceeding three dollars for every day so employed."

Section 1764 of the Revised Statutes provides that "No allowance or compensation shall be made . . . for any extra service whatever which any officer or clerk may be required to perform, unless expressly authorized by law;"

and section 1765, that "No officer in any branch of the public service or any other person whose salary, pay or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance or compensation in any form whatever from the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states it is for such additional pay, extra allowance or compensation."

Of these provisions, while they were part of the act of August 23, 1842, c. 183, 5 Stat. 508, and before they were carried into the Revised Statutes, it was said by this court, in *Hoyt* v. *United States*, 10 How. 108, 141: "It [this statute] cuts up by the roots those claims by public officers for extra compensation, on the ground of extra services. There is no discretion left in any officer or tribunal to make the allowance, unless it is authorized by some law of Congress. The prohibition is general, and applies to all public officers, or *quasi* public officers, who have a fixed compensation."

Many cases to the same effect, construing these provisions, are collected in *United States* v. *King*, 147 U. S. 676, and in *Mullett's Administratrix* v. *United States*, 150 U. S. 566, 570, where it was said that, "obviously, the purpose of Congress, as disclosed by these sections, was that every officer or regular employé of the government should be limited in his compensation to such salary or fees as were by law specifically attached to his office or employment. 'Extras,' which are such a fruitful subject of disputes in private contracts, were to be eliminated from the public service."

We are unable to accept the contention that it was competent for the Secretary of the Treasury, by passing regulations, dividing a day's service into parts, to attach to each part the pay for a full day's work. By the word "day" in section 2733, Congress evidently meant the calendar day; and the purpose of Congress in prescribing the pay of three dollars for every day, and in forbidding any allowance or compensation for extra services, would be defeated if the regulation in question were to be construed as providing that a period of twenty-four hours might be so divided as to justify two or more payments,

to the same person, of the amount fixed for the daily compensation.

Nor do we think that such a construction can be properly given to the regulation in question. Nothing is said therein of double pay in case the officer serves both watches. In such a case, the provision is that he will be excused from performing any duty the following night. This express provision negatives the inference that if he serves an all-night watch he will be entitled to double pay, and it certainly does not afford a ground on which to base an implied contract for full pay for both watches.

*United States* v. *Martin,* 94 U. S. 400, does not help this claimant's case, for there the court was construing a statute of Congress declaring that eight hours should constitute a day's work for all laborers, workmen and mechanics. Rev. Stat. sec. 3738. It is not pretended that the present claimant falls within the provisions of that statute. He stands only on the regulation already quoted, and which must be interpreted in such a way as to consist with the statutes mentioned.

It is not found that the claimant himself ever demanded, during the period of his service, the compensation he now seeks. What he complained of was that, after he had performed an all-night service, he was not excused from duty the following night. He was not employed for any specific period, and was at liberty to quit the service if he thought the duties too onerous. He, however, elected to remain during the period above mentioned, and to receive the compensation awarded him by the collector, without any protest as to its insufficiency. It may be fairly presumed that the collector, in paying, and the claimant, in accepting, the money paid, supposed that the payments were in full. Such a course of conduct, we think, brings this claimant within the principle of well-settled cases, that the receipt of payment, purporting to be in full, where there is no fraud or coercion, cannot afterwards be repudiated as insufficient. *Baker* v. *Nachtrieb,* 19 How. 126; *United States* v. *Child,* 12 Wall. 232; *De Arnaud* v. *United States,* 151 U. S. 483.

Such a principle is especially applicable to the transactions of the government, whose expenditures are met by legislative

appropriations. We do not want to be understood as saying that the mere fact of receiving money in payment will estop a creditor. But where, as in this case, the payments were made frequently, through a considerable period of time, and were received without objection or protest, and where there is no pretence of fraud, or of circumstances constituting duress, it is legitimate to infer that such payments were made and received on the understanding of both parties that they were in full. Such a presumption is very much strengthened by the lapse of two years before the appellee thought fit to make any demand.

These views sufficiently dispose of the case, and render it unnecessary to consider the other contentions urged on behalf of the government.

*The decree of the Court of Claims is reversed, and the cause is remanded to that court with directions to dismiss the claimant's petition.*