Williams, Judge,
dissenting:
The plaintiff in this case, upon the payment to it on June 21, 1921, of the sum of $850,421.10 as final payment of its claims against the Government under contract No. 240, executed the following release:
28905-011/155-56 S/T/B
Release
Contract No. 240
Whereas, by a certain contract, dated April 9, 1911, by and between James Shewan & Sons, Incorporated, of Brooklyn, N. Y., party of the first part, and the United States, represented by the Secretary of the Navy, party of the second part, it is agreed that the party of the first part will repair and make alterations for the Navy to such vessels as might be sent to its works for that purpose; and
Whereas, by paragraph five, page six, of said contract, the party of the first part agrees to execute a final release, to the department, in such form and containing such provisions as shall be approved by the Secretary of the Navy, *115 of all claims against tlie United States arising under or by ■virtue of said contract; and
Whereas all work on vessels sent to the company’s yard for repairs and alterations under said contract has been completed and said contract has been canceled by the department, on September 22, 1919.
Now, therefore, in consideration of the premises and the payments made to the said party of the first part, the said party of the first part does hereby undertake, promise, and engage to and with the party of the second part as follows, viz:
The said party of the first part, for itself, its successors, and assigns does hereby remise, release, and forever discharge the United States of and from all manner of debts, dues, sum or sums of money, accounts, reckonings, claims, and demands whatsoever in law or in equity for or by reason of or on account of work done under said contract, or on account of the cancellation thereof.
In witness whereof, James Shewan & Sons, Incorporated, has caused its corporate name to be hereunto subscribed and its seal hereto affixed this 27th day of June, 1921, by its James Shewan & Sons, Incoepoeated,
By H. L. Van Noeden, [seal.]

See\j <S Trea.

Signed and sealed in the presence of: ■
H. W. Ueiebson.
Paragraph 5 of section 14 of the contract provides:
“ 5. Final payments shall be made for work done on each vessel in due course after such work is finished and on the execution of a final release to the department, in such form and containing such provisions as shall be approved by the Secretary of the Navy, of all claims against the United States arising under or by virtue of this contract.”
Under the provisions of this paragraph of the contract the Secretary of the Navy required, and the plaintiff gave and executed, the release above set out.
The release purports to be, and is, a complete and unconditional acquittance and bars the plaintiff’s right to maintain this suit unless it is shown to have been given in ignorance of its purport, or in circumstances constituting duress, fraud, or mistake. De Arnaud v. United States, 151 U. S. 483; United States v. Garlinger, 169 U. S. 316, *116 322; United, States v. Child, 12 Wall. 232; United States v. Justice, 14 Wall. 535; Baker v. Nachtrieb, 19 How. 126.
It is not claimed the release was given in ignorance of its purport, nor under circumstances constituting either fraud or mistake. It is, however, claimed that it was obtained and executed under circumstances constituting duress in law, the petition alleging:
“ Plaintiff had to have the money which was due it and which was thus improperly withheld for the sole purpose of forcing plaintiff against its will to sign a release to which the Government was not entitled and had no right to demand. Plaintiff’s financial condition was already embarrassed by the long and unjustifiable withholding of this money, and, if the same was to be longer withheld without interest, plaintiff’s business life was in jeopardy. Therefore, in order to obtain the money admitted to be due it, and being faced with the unjustifiable deprivation of interest on said money, for which deprivation it was without any redress, legal or otherwise, plaintiff, by coercion and under duress, and without its voluntary act and deed, executed said release.”
The acts and statements of the defendant and the circumstances leading up to and surrounding the execution of the release, which plaintiff claims constitute duress, are fully set out in the findings and briefly stated are: The refusal o.f the Secretary of the Navy to pay plaintiff the sum of $850,-427.10, the amount determined by the Secretary to be due plaintiff on the contract, unless plaintiff would execute an unqualified and unconditional release of all of its claims growing out of the contract; the statement of representatives of the Secretary, that unless the amount tendered by the defendant was accepted, available appropriations out of which its claims could be paid would lapse and revert to the Treasury, July 1, 1921, and that the Secretary thereafter would be without funds to pay plaintiff; that an act of Congress would be required to enable plaintiff to bring suit in the Court of Claims; that the court would not allow interest on whatever judgment it might render and that because of the delays incident to litigation, the costs, attorney’s fees, etc., plaintiff would probably suffer a loss in the end if it did not accept the settlement offered.
*117 Do these acts and statements of the defendant, and the facts and circumstances surrounding the execution of the release, considered in connection with the plaintiff’s financial extremities at the time, constitute that degree and character of coercion which will permit plaintiff to avoid the release on the ground that it was executed under duress ?
In Hackley v. Headley, 45 Mich. 569, 574, cited by Mr. Justice Stone in Hartsville Oil Mill case (271 U. S. 43) duress is defined as follows:
“ Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will.”
In McCormick v. City of St. Louis, 166 Mo. 315, 332, the court in a case where a contractor who was doing work for the city sought to avoid a release on the ground that it was executed under duress, said:
“ But plaintiff, to further defeat the effect of the estimates as an account stated, says that he was forced to accept the figures of the estimates, and to receipt against them in full satisfaction for all claims against the city growing out of work and labor done by him in and about the construction of the tunnel and tower, on account of a financial disaster that threatened him if he did not get the money that lyas due him at that particular time; and, in the second place, that in accepting the sum tendered by the city in payment of its claim, he did so under protest, and notified the city at the time that he would still insist upon the balance as claimed by him to be due under the contract; and, further, that defendant in paying to him the amount of the items of the estimates, only paid what is acknowledged to be due, and that the acceptance of same by him and the giving of his receipt therefor did not under the circumstance operate to render the estimates an account stated, and that no consideration was paid or concession made for plaintiff’s receipt.
“ That force or duress may be pleaded or shown to avoid the effect of, or to have annulled a receipt under its influence, is unquestionably true, but to make the force or constraint upon a party causing his action, availing to him as a defense against the consequences thereof, it should be shown that the party benefited thereby or some one with his knowledge and approval, in some manner or by some means constrained or forced the action of the injured party.
*118 “ The thing that forced jdaintiff to accept the terms of settlement offered by the defendant, in this case, was not in anywise the result or the action or conduct of defendant or any of its agents, but as shown by plaintiff himself, was the result ox circumstances and conditions over wmcn the defendant city had no control, and with which it had no concern or connection, ‘ his financial necessities.’ ”
In French v. Shoemaker, 14 Wall. 314, 333, the court said:
“ Enough appears in the record to'convince the court that the respondent was in straitened circumstances, that his business affairs had become complicated, that he was greatly embarrassed with litigations, and that he was in pressing want of pecuniary means, but the court is wholly unable to see that the complainant is responsible for those circumstances or that lie did any unlawful act to deprive the respondent of his property, or to create those necessities or embarrassments, or to compel him to do what he acknowledges he did do, which was to yield to the pressure of the circumstances surrounding him, and as a choice of evils accepted the advance of five thousand dollars and the shares assigned him in the new organization as proposed, and voluntarily signed both the agreement and the assignment. Such an act as that of signing those instruments, under the circumstances disclosed in the record, must be regarded, both in equity and at law, as a voluntary act, as it was unattended by any act of violence, or threat of any kind, calculated in any degree to intimidate the party or to force the result, or to compel that consent which is the essence of every valid contract.”
In the case of Silliman v. United States, 101 U. S. 465, the court had before it a case where the plaintiff had chartered certain barges from the Quartermaster General. Thereafter the Quartermaster General demanded that the plaintiff execute new charter-parties at a reduced rate. The plaintiff refused to do so and demanded a return of the barges. Whereupon the Government notified the plaintiff that unless he executed new charter-parties his vessels would be retained and all compensation withheld. Being in desperate financial straits the plaintiff executed new charter-parties. Thereafter the plaintiff brought suit in this court (12 C. Cls. 433), seeking to avoid the new charter-parties as having been executed under duress.and to enforce the origi *119 nal contracts. This court rendered judgment against the plaintiff, which on appeal was sustained, the court saying:
“ Had the claimants stood upon their contract rights it is perfectly clear that the Government could have been compelled to pay the amount stipulated in the original contracts to be paid for the use of the barges. The claimants could have sued for each installment of rent as it became due, or when the Government returned the barges they could have sued, as they now sue, for the whole amount due under the original charter-parties. They had a full and complete remedy by suit against the Government in the Court of Claims for the enforcement of their rights under those contracts. * * *
“ Instead, however, of seeking the aid of the law, claimants, with a full knowledge of their legal rights, executed new charter-parties, and, from time to time, received payments according to the rates prescribed therein — protesting, when the new agreements were signed, that they were executed against their wishes and under the pressure of financial necessity. They now seek the aid of the law to enforce their rights under the original charter-parties, upon the ground that those last signed were executed under such circumstances as amounted, in law, to duress. Duress of, or in, what? Not of their persons, for there is no pretense that a refusal, on their part, to accede to the illegal demand of the quartermaster’s department would have endangered their liberty or their personal security. There was no threat of injury to their persons or to their property, to avoid which it became necessary to execute new charter-parties. Nor were those charter-parties executed for the purpose, or as a means of obtaining possession of their property. They yielded to the threat or demand of the department solely because they required, or supposed they required, money for the conduct of their business or to meet their pecuniary obligations to others. Their duty, if they expected to reiy upon the law for protection, was to disregard the threat of the department, and apply to the courts for redress against its repudiation of a valid contract.”
In Secor v. Clark, 117 N. Y. 350, 353, the court said:
“ There is no allegation in the complaint, and there was no proof upon the trial of any fraud or deception practiced by Clark in procuring the assignment from the plaintiffs. At the time thej'' executed it, they knew all about the facts, and the substance of their claim is that they took the *120 $8,500 for fear they would not be able to collect the $10,000, or might be delayed in collecting it, or might be subjected to expense in collecting it. Such things do not constitute duress within any authority to be found in the books, and do not entitle the plaintiffs to any relief.”
In Hazelhurst Oil Mill c& Fertilizer Co. v. United States, 70 C. Cls. 334, the court said:
“ Counsel for defendant cite cases which show that it has often been held that fear that financial loss will result if a threat is carried out is not sufficient by itself and alone to constitute duress, but in most of these cases it will be found that the threat which was made was simply to exercise some legal right and this, however serious the'effect might be upon the other party, never constitutes duress.” (Italics supplied.)
The cases cited are but a few of the almost innumerable decisions of the courts, State and Federal, holding that a release, contract, or other like instrument, executed under the pressure of financial necessity, or because of a fear or belief that financial loss would otherwise result, by one having knowledge of its import and legal effect, can not be avoided as having been executed under duress, where no unlawful act or illegal exaction was committed, or threatened to be committed by the other party. The authorities cited as supporting duress in this case, as I interpret them, do not express a contrary view. In each of the cases relied upon some unlawful act or illegal exaction of the other party is held to have constituted the duress found.
In Robertson v. Frank Brothers Co., 132 U. S. 17, the court held that duress was created where a customs official had made excessive and illegal charges against an importer bringing in goods, who to avoid onerous penalties and get possession of his goods paid such charges.
In Union Pacific Railroad Company v. Public Service Commission of Missouri, 248 U. S. 67, 70, the railroad company made application to the Public Service Corporation of Missouri for a certificate authorizing the issue of its bonds secured by a mortgage on its line. The commission issued the certificate and charged a fee of $10,962.25. The company accepted the certificate but protested in writing *121 against the charge on the ground that it was excessive and an unconstitutional interference with interstate commerce, and gave notice that it paid under duress and to prevent the revocation of the certificate.
The court held the charge, although in accordance with the letter of the Missouri statutes, was an unlawful interference with commerce among the States and that the railroad company paid the fee under duress.
The language of the court leaves no doubt that the duress, under which the railroad company was held to have acted, was created solely because of an illegal and unconstitutional exaction made by the public service corporation.
Swift Company v. United States, 111 U. S. 22, was a case arising under the act of July 14, 1870, c. 255, section 4, 16 Stat. 257, which provided that the proprietor of friction matches who furnished his own dies, was entitled to a commission of ten per cent payable in money upon the amount of adhesive stamps over $500.00 which he at any one time purchased for his own use from the Bureau of Internal Revenue.,
The commissioner in plain violation of the statute required the plaintiff who had purchased such proprietary stamps to receive his commission in stamps at their face value, instead of in money. The question before the court was whether receipts and settlements made by plaintiff in pursuance of such illegal action on the part of the commissioner were voluntary or made under duress. The court said:
“ This was in effect, to say to the appellant, that unless it complied with the exaction, it should not continue its business; for it could not continue business without stamps, and it could not purchase stamps except upon the terms prescribed by the Commissioner of Internal Revenue. * * * The only alternative was to submit to an illegal exaction, or discontinue its business.”
In Freund et al. v. United States, 260 U. S. 60, 70, the plaintiffs, who had a contract with the Post Office Department for a mail-carriage service to and from a proposed new post-office site, via scheduled stations, with stops en route to *122 collect mail from letter carriers, for which they were to be paid for every mile traveled, they to provide the necessary equipment to perform the service, were held to have acted involuntarily when required by the department to render much heavier services on substituted routes between railroad stations and another post-office site, involving increased equipment and expense for which service they were paid the same mileage rate, but without counting trips on which no mail was carried. The plaintiffs protested against performing the services.required on the substituted routes, with the .increased work and expenditures, but under a threat by the Post Office Department that their contract would be read-vertised and suit brought against them on their bond if they refused, they performed the services demanded. Plaintiffs brought suit for the work done on the substituted routes on a quantum meruit.
The Government contended, first, that the substitution of the restated service was authorized by a provision in the contract which authorized the Postmaster General to establish service to and from like offices, stations, etc., to those named in the schedules, to be paid for at the contract rate per mile and, second, that the plaintiffs having performed the services on the substituted routes and accepted full pay under the contract as construed by the department, had accepted such substitution, which acceptance barred a recovery for what the services were really worth. The court decided these contentions against the Government, saying:
“ We think that there was no acceptance of the new route under the circumstance which would bar a recovery for what the services were reasonably worth.”
It clearly appears that the decision in this case was grounded on the lack of authority of the Postmaster General to impose obligations on plaintiffs, and to require services of them not within the reasonable contemplation of the parties when the contract was entered into. As to the element of duress, the court said:
“ We can not ignore the suggestion of duress there was in the situation or the questionable fairness of the conduct of *123 tbe Government, aside from the illegality of the construction of the contract insisted on, and have no difficulty, therefore, in distinguishing this case from the so-called Railroad Mail Cases, * * * which are cited on behalf of the United States.”
What unlawful act did the defendant commit or threaten to commit in the instant case? What illegal exaction did it demand of the plaintiff?
Certainly the statement of the representative of the Secretary of the Navy that available appropriations out of which plaintiff’s claim could be paid would lapse July 1, 1921, and revert to the Treasury was not an unlawful act. It was not in any sense a threat. The appropriation would lapse, not because of any act, lawful or otherwise, on the part of the Secretary, but through operation of the law, a fact the plaintiff knew or is presumed to haA^e known.
It was not an unlawful act, although one of doubtful propriety, to remind the plaintiff of the long delays and expenses incident to litigation and the fact that plaintiff might lose money in the end if it refused to settle its claims on the terms proposed by the Secretary and resorted to the court to enforce such claims.
The contract provided that on final pajunent the plaintiff would execute a final release, in such form as shall be approved by the Secretary of the Navy, of all claims against the United States arising under or by virtue of the contract. It Avas not an unlawful act or an illegal exaction to require plaintiff to execute a final release in conformity with the terms of the contract. It was not unlawful for the Secretary to Avithhold final payment until such release was executed. The fact that the contract had been canceled is not material. The cancellation of the contract did not change in any way rights or obligations accruing to the parties under it prior to its cancellation.
All the claims in suit, and so far as the record shows, the whole of plaintiff’s claims pending at the time the release was executed, were for services performed and material furnished prior to the cancellation of the contract. In a letter to the Secretary of the Navy, February 2, 1920, more *124 than four months after the contract was canceled, the plaintiff said:
“ We figure that under contract No. 240 we are owed by the Navy Department approximately the sum of one million four hundred and fifty thousand dollars ($1,450,000).”
The Secretary of the Navy acted not only within his lawful authority when he required plaintiff to sign the release upon payment to it of $850,427.10, the amount the Secretary had determined was due plaintiff under the contract, but he would have been derelict in his duty to the Government had he not done so. He had no lawful authority to make final settlement with plaintiff on any other basis. These facts and circumstances, in my opinion, do not justify holding plaintiff acted under duress in executing the release in question.
It is further urged by the plaintiff that the release was made without consideration and is void. It is contended the defendant paid plaintiff only the amount admittedly due; that the facts within the knowledge of the Secretary of the Navy at the time the release was executed clearly showed that a larger sum was due, and that the release of the entire sum, upon the payment of a part thereof, was Avithout consideration and does not bar the plaintiff’s right to sue and recover the balance. Plaintiff says in its brief, “ The payment to plaintiff of $850,427.10 was in no case a settlement of a disputed claim. This amount was admittedly due and the balance was never discussed, much less disputed.”
The question presented was discussed by the Supreme Court in Chicago, Milwaukee & St. Paul Ry. Co. v. Clark, 178 U. S. 353. In an exhaustive review of the decisions of that court and other courts on the subject the court said:
“ In United States v. Bostwick, 94 U. S. 53, 67, it was said that: ‘ Payment, by a debtor of a part of his debt is not a satisfaction of the whole except it be made and accepted on some neAV consideration; ’ while in Baird v. United States, 96 U. S. 430, it was held that if the debt be unliquidated and the amount uncertain, this rule does not apply. ‘In such cases the question is Avhether the payment was in fact made and accepted in satisfaction.’ _
_ “ In Fire Insurance Association v. Wickham, 141 U. S. 564, 577, Mr. Justice Brown stated the doctrine thus: ‘ The *125 rule is Avell established that where the facts show clearly a certain sum to be due from one person to another, the release of the entire sum upon payment of a part is without consideration, and the creditor may still sue and recover the residue. If there be a bona fide dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void.’
“ In this case it can not be said that at the time the release was executed there was no good reason to doubt that these items were open to dispute. The good faith of the company in claiming their allowance is not impugned, as Judge La-combe said: ‘ Both items were legitimate matters of dispute, and unless settled by agreement of parties, might fairly be brought by either party into court.’
“And the cases are many in which it has been held that where an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole.
“ In Fuller v. Kemp, 138 N. Y. 231, where certain items of an account were disputed, and certain items were undisputed, and defendant paid plaintiff only the amount of the undisputed items, the court held that the dispute over certain of the items made the account an unliquidated one, and that plaintifi, by accepting the amount of the undisputed items with notice that it was sent as payment in full, was precluded from recovering the balance of his demand.
“ Nassoiy v. Tomlinson, 148 N. Y. 326, 330, is to the same effect, and the court said: ‘A demand is not liquidated even if it appears that something is due, unless it appears how much is due, and when it is admitted that one of two specific sums is due, but there is a genuine dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction.’
“ In Ostrander v. Scott, 161 Ill. 339, plaintiff had an account against defendant amounting to $5,282.58, the items of which were not in dispute, but defendant claimed that he was entitled to be allowed the sum of $1,210 for commissions, and accordingly he sent his check for the difference to plaintiff, at the same time notifying him that it was sent in settlement of his account in full, and if not accepted as *126 such to return it. The check was retained by plaintiff, and he afterwards brought suit against defendant to recover the amount withheld, but the Supreme Court of Illinois held that there could be no recovery, and that an account can not be considered as liquidated, so as to prevent the receipt of a less amount as payment from operating as a satisfaction, where there is a controversy over a set-on and the amount of the balance.
“ In Tanner v. Merrill, 108 Mich. 58, plaintiff sought to recover a sum which had been deducted from his wages by defendants, his employers. The amount of his wages was not disputed, but the right to make any deduction was questioned. Plaintiff received the amount of his wages less the deduction, and gave a receipt in full, and afterwards brought suit to recover the balance on the ground that, having only received the amount admitted to be due, there was no consideration for the release as to that which was disputed. The Supreme Court of Michigan held that the plaintiff could not recover, and that the rule that a receipt of part payment to be effective in the discharge of the entire debt must be rested upon a valid consideration, is limited to cases where the debt is liquidated by agreement or otherwise; that a claim, any portion of which is in dispute, can not be considered to be liquidated within the meaning of the rule; and that a receipt in full, given upon payment of the undisputed part of the claim, after a refusal to pay another part which is disputed, is conclusive as against the right of the creditor to recover a further sum, in the absence of mistake, fraud, duress, or undue influence.
“ Without analyzing the cases, it should be added that it has been frequently ruled by this court that a receipt in full must be regarded as an acquittance in bar of any further demand in the absence of any allegation and evidence that it was given in ignorance of its purport, or in circumstances constituting duress, fraud, or mistake. De Arnaud v. United States, 151 U. S. 483; United States v. Garlinger, 169 U. S. 316, 322; United States v. Adams, 7 Wall. 463; United States v. Child, 12 Wall. 232; United States v. Justice, 14 Wall. 535; Baker v. Nachtrieb, 19 How. 126.”
The facts in this case do not bring it within the class of cases cited in plaintiff’s brief. The claim was unliquidated, and the aggregate amount due plaintiff remained a matter of dispute between the parties until the date final settlement was made and the release executed. The plaintiff in its letter of February 2, 1920, claimed there was due it under contract No. 240, approximately $1,450,000. The *127 Solicitor of the Navy Department, acting for the Secretary, wrote plaintiff April 21, 1921, that the records of the department showed ther¿ was due plaintiff under the contract the sum of $850,427.10. The defendant at no time admitted there was due plaintiff a larger amount than was paid it on final settlement. There was at all times a bona f,cle dispute between the plaintiff and the defendant as to the claims in suit. While the defendant paid only what it conceded to be due, it paid the whole of such amount and only refused to pay such claims as it did not concede to be due and which were then and had at all times been in dispute. The amount paid was in final settlement and in full satisfaction of all claims and demands against the United States on account of work done by the plaintiff under contract No. 240. The plaintiff understood the import and legal effect of the release, and there being no fraud or mistake, it must be regarded as an acquittance in bar of any further demands or claims.
There is no merit in the suggestion that the claims in suit were never considered or passed on by the Secretary of the Navjq and that therefore the release does not bar plaintiff’s right to maintain suit for the recovery of such claims. The claims are for deductions made by the local cost inspector from invoices submitted by the plaintiff during the progress of the work, which invoices, less deductions, were paid.
The plaintiff, after the disallowance of the claims here involved by the local cost inspector, repeatedly made demands upon the Navy Department for their payment. In its letter of May 16, 1921, plaintiff itemized the claims now' in suit and said: “ We are unable to sign an unqualified release under contract No. 240, as there are invoices which are in question amounting to' $%46,6%6£8.” (Italics supplied.) The fact that the Secretary of the Navy refused to pay these claims can not under the facts shown be construed as a refusal or failure on his part to consider them. In fact his action in excluding the claims from the amount determined by him to be due the plaintiff under the contract and his refusal to pay them, although urgently importuned by the plaintiff to do so, amounts to a definite rejection and disallowance of. such claims.
*128 The plaintiff was not compelled to accept the amount tendered. It had a lull and complete remedy by suit against the Government for the enforcement of all its rights under the contract. With full knowledge of its legal rights, plaintiff accepted the amount the Secretary of the Navy determined was due it under the contract, and executed the release. By that act it foreclosed its right to maintain this suit.