### In re KING, Referee.

District Court, W. D. Tennessee.
June 29, 1935.

MARTIN, District Judge.

(1) An order entered on May 19, 1933, by the predecessor judge of this court, directing the purchase by the United States District Court for the Western Division of the Western District of Tennessee from C. H. King, referee in bankruptcy for the Western Division of the Western District of Tennessee, of the office furniture, fixtures, equipment, and law library owned by the said C. H. King, individually, for the sum of $5,173, upon the terms of payment described in said order with title retained in the seller, is declared to be contrary to law, null and void; and C. H. King, referee in bankruptcy, is directed to restore to each of the bankrupt estates all moneys drawn therefrom and paid to himself by virtue of said order, and the title to the

office furniture, fixtures, equipment, and law library attempted to be sold to the United States District Court by said C. H. King, pursuant to said order, will remain in the seller, C. H. King.

Said void order is as follows:

"Order Relating to Referee's Expense Account, Office Furniture, Fixtures and Equipment and Law Library.

"It having been brought to the attention of the Court that in various districts over the United States the office furniture, fixtures and equipment and law library of the offices of the Referees in Bankruptcy are acquired and maintained through the Referee's Expense Account as the property of the District Court for the district where such Referee's office is located, and the Court having considered the feasibility and advisability of establishing such a practice in the Referee's office for the Western Division of the Western District of Tennessee, and having been furnished by C. H. King, the present Referee in Bankruptcy for said Western Division of the Western District of Tennessee, with a list or inventory of the office furniture, fixtures and equipment and law library now belonging to and used by him in his office as Referee; and an appraisal having been made of the present value of such office furniture, fixtures and equipment and law library by three reputable practicing members of the bar, showing the value of all of the same to be $5,173.00, and the said C. H. King, Referee in Bankruptcy of said district having offered to sell said office furniture, fixtures and equipment and law library as shown upon said inventory to the District Court at said appraised value, and the Court being of the opinion that it is for the best interest of creditors and other interested parties in bankruptcy proceedings that the same should be acquired as the property of the United States District Court for the Western Division of the Western District of Tennessee at said price and upon the terms hereinafter stated, and should thereafter be maintained as hereinafter provided;

"It is therefore ordered:

"That the Referee in Bankruptcy for the Western Division of the Western District of Tennessee at all times maintain a reasonable fund to be known as the Referee's Expense Account, which fund shall be accumulated by the Referee by deducting and taking from each asset case in bankruptcy a reasonable sum, depending upon the assets in each case, to cover the Referee's expenses, and said fund shall be carried on deposit at some bank to be selected by the Referee in Bankruptcy and all disbursements shall be made therefrom by checks signed by the Referee, the same as heretofore has been the practice in said district, and from this fund the Referee shall pay the reasonable and necessary operating expenses in his office, including rent, lights, telephone and telephone calls, stationery, clerk hire, notices to creditors, printing, book binding, multigraphing, office supplies and all other ordinary and reasonable operating expenses of such office, and in addition out of said fund there shall be purchased and maintained the office furniture, fixtures, equipment and law library of said office as the property of the United States District Court for the Western Division of the Western District of Tennessee;

"And it is further ordered:

"That the United States District Court for the Western Division of the Western District of Tennessee acquire from C. H. King, the present Referee in Bankruptcy, the office furniture, fixtures, equipment and law library now located in his office as Referee in Bankruptcy as shown upon the inventory above mentioned and attached hereto at and for said sum of $5,173.00, and that he be paid therefor by checks drawn upon said Referee's Expense Account by himself or any successor in office, and that for this purpose he be paid an initial check out of the said expense account in the sum of $1,000.00, and that he thereafter be paid a check on said expense account monthly for not less than $100.00 until the total amount of said appraised value has been paid in full, and that the title to said property to be retained and remain in said C. H. King until the same is fully paid for, but the possession thereof to immediately pass to the United States District Court for the Western Division of the Western District of Tennessee;

"And it is further ordered:

"That said office furniture, fixtures, equipment and law library of the Referee's office shall be in the custody and charge of the Referee in Bankruptcy for the Western Division of the Western District of Tennessee, and that in the maintenance thereof in the future the Referee for said division and district shall out of said expense account purchase such additional office furniture, fixtures, equip-

ment and law books as he may deem advisable and necessary for said office and may repair, exchange in the purchase of new, or dispose of to the best possible advantage any office furniture, fixtures, equipment and law books that may become damaged, worn cut or obsolete.

"Enter this May 19th, 1933.

"H. B. Anderson, Judge."

[The court here lists four typewritten pages of office furniture, fixtures and equipment, with appraisement opposite each item.]

■ This court finds no authority, warrant, or justification in law for the entry of the foregoing order, and is constrained to declare and hold the said order null and void. A United States District Court cannot acquire and hold property at the expense of bankrupt estates. The arbitrary taxation of costs against bankrupt estates is not consistent with either the letter or the spirit of the law.

It is not conceivable to this court that it is "for the best interest of creditors and other interested parties in bankruptcy proceedings" that the referee in bankruptcy be directed to "at all times maintain a reasonable fund to be known as the Referee's Expense Account, which fund shall be accumulated by the Referee by deducting and taking from each asset case in bankruptcy a reasonable sum, depending upon the assets in each case, to cover the Referee's expenses; and out of said fund to purchase and maintain, as the property of the United States District Court, office furniture, fixtures, equipment and law library for the Referee's office." What possible benefit could be derived by a creditor from the referee's taking from the assets of a bankrupt estate in which the creditor has filed a claim an allowance to apply on the purchase, for the referee, of a glass window ventilator guard, an iron window guard, a glass top on a table, a red leather lounging chair (at a cost of $75), linoleum for the floor, a law book on Civil Procedure in a state court, another on Personal Injuries, a set of American Law Reports, vols. 1 to 74 inclusive, valued at $555, and several cuspidors? From the inventory listed, it is evident that the referee sold the court such personal office furniture, fixtures, equipment, and law books as he happened to possess at the time of the sale to the court.

But even more inconceivable does the validity of the order become, when the referee, by the provisions of the order, is permitted to pay himself individually for law books, office furniture, fixtures, and equipment transferred to the court on terms providing for an initial partial payment of $1,000, the balance to be paid in monthly installments of not less than $100 each, until the total amount of the consideration of $5,173 is paid, with title reserved in the referee, individually, until he has been paid in full out of future estates in bankruptcy by deducting and taking from each asset case a "reasonable sum" to be determined by himself.

By what possible warrant of law could a District Judge authorize a referee in bankruptcy to purchase, out of an expense account so arbitrarily maintained, "such additional office furniture, fixtures, equipment and law books as he may deem advisable and necessary" and "repair, exchange in the purchase of new, or dispose of to the best possible advantage any office furniture, fixtures, equipment and law books that may become damaged, worn out or obsolete?"

■ Even were it lawful for a United States District Court, as an arm of the federal government, to acquire and own property in its own right, certainly it would be contrary to the well-established and recognized care with which the United States of America conserves public property to vest in any official, as the void order vests in the referee in bankruptcy, such unbridled latitude to deal with public property by barter and exchange.

It is the opinion of this court that the title to public property, consisting of law books, furniture, fixtures, and equipment furnished by the Department of Justice pursuant to appropriation of Congress to a United States Court, for use in the performance of judicial duty, is not and cannot be vested in the court. The title to all such property remains vested in the United States of America. The court, as an arm of the government, can own nothing in its own right. The order under consideration purports to acquire property for the United States District Court in its own right and interest, and is therefore void.

Even if the United States District Court could hold title to property in its

own right, it is utterly inconceivable that the court could purchase personal property by conditional sale, with title reserved in the seller.

Unless the present judge of this court should hold the said order void, it would result that the referee in bankruptcy would be authorized to continue to collect arbitrary costs in pending bankruptcy cases, under the said order entered by the respected predecessor judge; and the present judge would be in the position of ratifying, confirming, and executing a continuing order deemed by him to be void. Respect for the predecessor judge must not, cannot, and will not restrain the present judge from action considered by him as necessary to the performance of his judicial duty.

In a recent case, In re Insull Utility Investments, Inc., 74 F.(2d) 510, decided by the Circuit Court of Appeals for the Seventh Circuit on January 2, 1935, it was held that, in a bankruptcy proceeding, a District Court had power to review orders of allowance for services, made by his predecessor in a bankruptcy case, because the rule that one judge will not review rulings of another in the same court applies to orders and rulings judicial in character, and not to administrative orders, such as allowances for compensation.

The Supreme Court of the United States held in Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Company, 263 U. S. 629, 44 S. Ct. 220, 68 L. Ed. 480, that a rule of court cannot enlarge or restrict jurisdiction, or abrogate or modify the substantive law.

This principle was announced in earlier decisions of the Supreme Court also. In 1831, Mr. Justice Story held, in Doe ex dem. Patterson v. Winn, 5 Pet. 233, 243, 8 L. Ed. 108, that however convenient a rule established by a Circuit Court, relative to the introduction of secondary proof might be, to regulate the general practice of the court, it could not control the rights of the parties in matters of evidence admissible by the general principles of law. In 1861, Chief Justice Taney delivered the unanimous opinion for the court in The Steamer St. Lawrence, 1 Black, 522, 17 L. Ed. 180, holding that courts cannot enlarge or diminish their own jurisdiction by rules of practice.

In later cases, the principle has been adhered to. Venner v. Great Northern Railway, 209 U. S. 24, 35, 28 S. Ct. 328, 331, 52 L. Ed. 666, declares that "The jurisdiction of the circuit court is prescribed by laws enacted by Congress in pursuance of the Constitution, and this court by its rules has no power to increase or diminish the jurisdiction thus created, though it may regulate its exercise in any manner not inconsistent with the laws of the United States." See, also, Davidson Marble Co. v. U. S. ex rel. Gibson, 213 U. S. 10, 18, 29 S. Ct. 324, 53 L. Ed. 675.

And again, in recent cases, the Supreme Court has announced the principle. In General Electric Co. v. Marvel Rare Metals Co., 287 U. S. 430, 53 S. Ct. 202, 77 L. Ed. 408, decided in December, 1932, a court rule was held to be without force as against conflicting statutory provisions. Johnson v. Manhattan Ry. Co., 289 U. S. 479, 503, 53 S. Ct. 721, 730, 77 L. Ed. 1331, decided May 29, 1933, is authority for the proposition that "By statute, 28 U. S. C. § 731 (28 USCA § 731), the power of the District Courts to make rules is confined to such as are 'not inconsistent with any law of the United States'; and it obviously would be thus limited even without the statute."

The doctrine of the Supreme Court of the United States with respect to void rules and orders of court is generally established.

"A void order is not made valid by lapse of time and ever remains without effect as completely as if never entered." 29 Cyc. 1522. "The rule that the court may not, after the lapse of the term set aside its final judgment, except motion to that end be entered at the judgment term has no application to the vacating of void orders." 29 Cyc. 1519.

"It is clearly within the province of a court to set aside a former ex parte order as soon as its attention is called to its indefensible character." 20 R. C. L. § 3, pp. 513, 514, citing, Stenbom v. Brown-Corliss Engine Co., 137 Wis. 564, 119 N. W. 308, 20 L. R. A. (N. S.) 956.

People v. Brown, 103 N. Y. 684, 9 N. E. 327, holds that an order made without jurisdiction is void and should be set aside. Loomis v. Andrews, 49 Cal. 239, is cited in 29 Cyc. 1521, as authority

for the proposition that, "If a judge at chambers makes an order which he has no power to make and afterwards set the order aside, and then at chambers by a subsequent order, reinstates the first order, the order reinstating is also without authority and void."

■ Where a court, in the exercise of its discretion, directs an order previously made by it to be stricken out, it is the same as if such order had never existed. Williams v. Floyd, 27 N. C. 649. "In a proper case the court may, of its own motion, * * * vacate or set aside an erroneous order." 29 Cyc. 1520; citing Killian v. State, 72 Ark. 137, 78 S. W. 766; Ex parte Hartman, 44 Cal. 32; Hall v. Polack, 42 Cal. 218. It is always in the power of a court to suspend its own rules, whenever the purposes of justice require it. United States v. Breitling, 20 How. 252, 15 L. Ed. 900. See the early case of Thatcher v. Powell, 6 Wheat. 119, 5 L. Ed. 221, holding a proceeding void.

■ The authorities are therefore abundant that a court should set aside a void order whenever justice demands it.

(2) An "Order Relating to Referee's Indemnity or Expense Account" was entered by the predecessor judge of this court on May 19, 1933, simultaneously with the entry of the foregoing order which has been pronounced void. The said "indemnity or expense account" order, now to be discussed, will be revoked and set aside, for the reasons given in this opinion.

Said order entered on May 19, 1933, and now revoked, is as follows:

"Order Relating to Referee's Indemnity or Expense Account.

"It having been brought to the attention of the Court that by a rule of the Supreme Court of the United States relating to indemnity or expense charges made by Referees in Bankruptcy in bankruptcy cases, Referees are required to make reports semiannually of receipts and expenditures and their nature in all cases referred, and therein refer to the particular rule or method by which the amount of expense charges against the individual estate is computed or fixed, and it being considered by the Court that it is desirable that a rule in regard to Referee's Indemnity or Expense Accounts should be established by the United States

District Court for the Western Division of the Western District of Tennessee;

"It is ordered:

"That from and after the entry of this order the Referee in bankruptcy shall deduct from each asset case not exceeding the following percentages of assets in such case for the purpose of maintaining said Referee's Expense Account:

"5% of the first $1,000.00 of assets, with a minimum of $7.50 to be deducted in any case provided the assets thereof amount to said sum, or the same may be required to be deposited by the bankrupt in any case where the assets are less than that amount. 4% of the next $4,000.00 of assets. 3% of the next $5,000.00 of assets. 2% of the next $10,000.00 of assets. 1% of the next $30,000.00 of assets. ½ of 1% of the next $50,000.00 of assets. ¼ of 1% of the next $100,000.00 of assets. 1/8 of 1% of the balance of the assets.

"Enter this May 19th, 1933.

"H. B. Anderson, Judge."

■ In the opinion of this court, the scale of deductions from asset cases provided for in said order is exorbitant and contrary to the principles and policy of the National Bankruptcy Act (11 USCA § 1 et seq.), as provided in the Acts of Congress and in the General Orders in Bankruptcy promulgated by the Supreme Court of the United States, pursuant to the authority of Congress. Furthermore, there seems no necessity for any court order relating to referee's indemnity or expense account, for the reason that ample provision, in said statutes supplemented by said general orders in bankruptcy, has been made for the indemnity of the referee against proper expenses.

Complete provision for the full compensation of referees in bankruptcy for their services is found in 11 USCA § 68a, in the following language: "Referees shall receive as full compensation for their services, payable after they are rendered, a fee of $15 deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and 25 cents for every proof of claim filed for allowance, to be paid from the estate, if any, as a part of the cost of administration, and from estates which have been administered before them 1 per centum commissions on all moneys disbursed to creditors by the trustee, or one-

half of 1 per centum on the amount to be paid to creditors upon the confirmation of a composition."

Acts of Congress have further provided in 11 USCA § 112: "Neither the referee, receiver, nor trustee shall in any form, or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed in this title."

With respect to expenses of administration of bankrupt estates, the Congress has provided as follows, in 11 USCA § 102: "The actual and necessary expenses incurred by officers in the administration of estates shall, except where other provisions are made for their payment, be reported in detail, under oath, and examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred."

It was provided by the Congress in title 11 USCA § 53, that: "All necessary rules, forms, and orders as to procedure and for carrying the provisions of this title into force and effect shall be prescribed, and may be amended from time to time, by the Supreme Court of the United States."

■ It is, of course, settled law that the rules, forms, and orders prescribed by the Supreme Court are intended to provide for the enforcement of the Bankruptcy Law, and not to enlarge, take from, or vary its provisions; and, within this purpose and limitation, they are of binding force and effect on the court. George M. West Co. v. Lea, 174 U. S. 590, 19 S. Ct. 836, 43 L. Ed. 1098.

The general orders in bankruptcy adopted, and established by the Supreme Court of the United States, pursuant to the aforesaid statutory authority contained in title 11 USCA following section 53, as amended April 17, 1933, provide in General Order No. 10 indemnity to officials for expenses, in these words: "Before incurring any expense in publishing or mailing notices, or in traveling, or in procuring the attendance of witnesses, or in perpetuating testimony, the clerk, marshal or referee may require, from the bankrupt, debtor, or other person in whose behalf the duty is to be performed, indemnity for such expense. Money advanced for this purpose by the bankrupt, debtor, or other person shall be repaid him out of the estate as part of the costs of administering the same."

It is apparent that the Supreme Court intended to provide for expense indemnity to the referee only to cover the specific items of (1) publishing or mailing notices, (2) traveling, (3) procuring attendance of witnesses, and (4) perpetuating testimony.

The basis upon which the court order under discussion rested will be found in General Order No. 35, subd. 2 (11 USCA following section 53), to wit: "The compensation of referees, prescribed by the Act, shall be in full compensation for all services performed by them under the Act, or under these General Orders; but shall not include expenses necessarily incurred by them in publishing or mailing notices, in traveling, or in perpetuating testimony, or other expenses necessarily incurred in the performance of their duties under the Act and allowed by special order of the judge."

■ It is well-settled law that the policy of the Bankruptcy Act, manifest in all its provisions regarding expenses and fees, is to reduce to a minimum the cost of administering estates, and the courts are bound to give the statute such a construction and application as will fulfill the intention of Congress in this respect. In re J. W. Harrison Mercantile Co. (D. C.) 95 F. 123; In re Fullick (D. C.) 201 F. 463; In re Weissman (D. C.) 267 F. 588; In re Consolidated Distributors (C. C. A.) 298 F. 859.

■ It is the duty of every one connected with the administration of the bankruptcy laws to make sure that no fees or charges, except those intended by the Acts of Congress, are paid out of the estate. In re Metallic Specialty Mfg. Co. (D. C.) 215 F. 937.

If there were any doubt upon the question of the duty of federal courts to hold down the expenses of administration of bankrupt estates, it has been resolved in a very recent decision of the Supreme Court of the United States.

In Realty Associates Securities Corporation v. O'Connor, 55 S. Ct. 663, 665, 79 L. Ed. 1446, decided April 29, 1935, Mr. Justice Cardozo, in delivering the unanimous opinion of the Supreme Court, said: "Referees in bankruptcy are public officers (11 U. S. C. §§ 61, 64 [11 USCA

358

§§ 61, 64]) and officers of a court. Like public officers generally, they must show clear warrant of law before compensation will be owing to them for the performance of their public duties. United States v. Garlinger, 169 U. S. 316, 321, 18 S. Ct. 364, 42 L. Ed. 762; People ex rel. Rand v. Craig, 231 N. Y. 216, 221, 131 N. E. 894. Extravagant costs of administration in the winding up of estates in bankruptcy have been denounced as crying evils. Strengthening Procedure in the Bankruptcy System, Sen. Doc. No. 65, 72d Congress, 1st Sess. (1932), p. 53; also H. R. Rep. 65, 55th Congress, 2d Sess. (1898), p. 44. In response to those complaints, Congress has attempted in the enactment of the present statute to fix a limit for expenses growing out of the services of referees and receivers. Bankruptcy Act, §§ 40, 48 d, e, as amended, 11 U. S. C. §§ 68, 76 [11 USCA §§ 68, 76 (d, e)]."

: And yet, the court order under discussion provides for a 5 per cent. deduction on the first $1,000 of assets in bankrupt estates for the referee's expense account; while the Act of Congress allows the referee only 1 per cent. commission on all moneys disbursed to creditors by the trustee.

The court order provides a minimum deduction of $7.50 for the referee's expense account in any case, provided the assets thereof amount to said sum, with a requirement optionally at the will of the referee that the bankrupt deposit the said sum of $7.50 in any case where the assets are less than that amount; while the Act of Congress allows the referee a fixed compensation of only $15, plus 25 cents for each proof of claim filed for allowance, and no more, unless there are sufficient assets to make a distribution to creditors. This contrast demonstrates that the court order exacts an exorbitant cost requirement, entirely inconsistent with the manifest policy of Congress to keep down costs in bankruptcy. The sliding scale provided in the court order in the higher brackets is subject to like criticism.

The court finds on file in the clerk's office no report from the referee in bankruptcy for the period ending July 31, 1933, which would have shown the condition of the referee's expense account at the time of entry of the orders of May 19, 1933. There is on file in the office of the clerk the referee's report for the six months' period ending January 31, 1934. This report states that the referee had on hand an unexpended balance on August 1, 1933, of $1,108.09, and that receipts for the six months' period reported amounted to $4,509.60. The total disbursement for the six months' period as shown by said report amounted to $4,829.72; whereof the principal items of expense were $1,690.00 in salaries, $960 for rent, $1,718.75 for law books, furniture, and fixtures, and the rest of the items of expense for office supplies, stationery, printing, telegraph and telephone, and miscellaneous. The unexpended balance of the referee's expense fund on January 31, 1934, was shown as $787.97, thus exhibiting a depletion of $320.12 in the unexpended balance on hand August 1, 1933.

There is also on file in the clerk's office the referee's report for the six months' period ending July 31, 1934, showing total receipts for the period of $3,053.80, and total disbursements of $3,726.56, reducing the unexpended balance in the referee's expense account to $115.21. The items of salaries of $1,690 and rent of $960 remain the same as for the previous six months' period. Thus, it appears from the two reports that the referee's expenditures in costs taken from estates in bankruptcy amounted, for the year ending January 31, 1934, to the large sum of $8,556.28, which is entirely too high.

The last report of the referee, filed March 19, 1935, for the six months' period ending January 31, 1935, shows total receipts for the period of $2,120.44, and total disbursements of $2,087.81, leaving an unexpended balance in the referee's expense account of $147.84.

Each of the said three reports of the referee contain this sentence: "By District Court Rule expense receipts are arbitrarily fixed without regard to the particular expense in any one case. Disbursements for numerous items below (rent, telephone, clerical hire) are not allocated to particular cases. There seems thus no intelligent or practical method for giving receipts and expenses with respect to each case."

Is not this an admission of a manifest violation of the Act of Congress, title 11 USCA § 102, and the General Orders of the Supreme Court, 26, as amended April 17, 1933 (11 USCA following section 53)?

Title 11 USCA § 102, provides: "The actual and necessary expenses incurred by officers in the administration of estates shall, except where other provisions are made for their payment, be reported in detail, under oath, and examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred."

General Orders of the Supreme Court, 26, as amended April 17, 1933 (11 USCA following section 53), provide: "Every referee shall keep an accurate and itemized account showing, with respect to each case referred to him, his receipts and expenditures and their nature. Within sixty days after the expiration of each six months period ending January thirty-first and July thirty-first respectively, in each year, he shall submit to the district court (1) a transcript of such account, with proper vouchers when vouchers can be procured; (2) a statement showing the unexpended balance, if any, of moneys received as indemnity or charges for expenses; (3) if the referee devotes part time to his duties, a statement showing the extent to which and the method by which any overhead expenses have been allocated to and reimbursed out of the cases referred to him; (4) the particular rule or method by which the amount of expense charges against individual estates is computed or fixed; (5) a statement of the cases referred to him which have remained open for more than eighteen months, giving the reasons in each instance why they have not been closed. The accounts and statements so submitted shall be in duplicate and verified; one copy shall be transmitted by the clerk, forthwith upon its receipt, to the Attorney General."

In re Daniels (D. C.) 130 F. 597, holds that under the Bankruptcy Act the only allowance which can be made to a referee in addition to the fees and commissions expressly prescribed therein is for expenses necessarily incurred, a detailed account of which must be kept and returned to the court, verified by the oath of the referee, and accompanied by vouchers when they can be secured. Certainly, there should be, in the opinion of this court, no general commingling of funds in the hands of the referee advanced for costs, in such manner as to prevent a refund to the proper estates in bankruptcy of excess or excessive cost charges.

For the foregoing reasons, the said indemnity expense account order entered on May 19, 1933, will be revoked and set aside.

(3) A "General Order and Rule of Court in Bankruptcy Cases" was entered by the predecessor judge of this court on July 5, 1934, providing for the payment to the referee of $15 to cover referee's expenses incident to the reopening of cases in bankruptcy. The said order first came to the attention of the present judge of this court in a case in which the petitioning bankrupt desired to reopen the case for the purpose of obtaining from the trustee a disclaimer of interest in the real estate of the bankrupt upon which there were two mortgages; so that the bankrupt could comply with the requirements of the Home Owners' Loan Corporation. There seemed no supportable reason why $15 should be charged by the referee as costs, and there seems none now. Furthermore, it is generally apparent that the cost charge is excessive and contrary to the principles discussed heretofore. Accordingly, the said "General Order and Rule of Court in Bankruptcy Cases," entered July 5, 1934, will be revoked and set aside.

Appropriate orders will be entered in compliance with this opinion.